UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOY TABERNACLE–THE NEW
TESTAMENT CHURCH,

      Plaintiff,

                                Case No. 13-cv-11650
                                Honorable Gershwin A. Drain

v.

STATE FARM FIRE AND CASUALTY
COMPANY,

      Defendant.
_____/

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [#22] AND GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT [#23]**

**I.   INTRODUCTION**

On April 12, 2013, Defendant State Farm Fire and Casualty Company ("State Farm") removed the instant action from the Genesee County Circuit Court pursuant to 28 U.S.C. § 1446(a) and 28 U.S.C. § 1332.  Plaintiff, Joy Tabernacle–The New Testament Church, alleges that State Farm breached the parties' agreement by failing to pay for covered losses under a policy of insurance issued by State Farm.  Plaintiff also brings a claim for violation of the Uniform Trade Practices Act, MICH. COMP. LAWS § 500.2006.

Presently before the Court is Plaintiff's Motion for Partial Summary Judgment and State Farm's Motion for Partial[1] Summary Judgment, both filed on March 17, 2014.  These matters are

_____

[1] At oral argument, State Farm explained that its Motion should actually be a Motion for Partial Summary Judgment rather than total Summary Judgment because it was not seeking judgment in its favor on Plaintiff's water loss claim since there are material questions of fact as

fully briefed and a hearing was held on July 14, 2014.  For the reasons that follow, the Court will deny Plaintiff's Motion for Partial Summary Judgment and will grant State Farm's Motion for Partial Summary Judgment.

## II.     FACTUAL BACKGROUND

The Plaintiff congregation purchased the church, built in 1927, located at 2505 N. Chevrolet Avenue, Flint, Michigan, in October of 2009.  Plaintiff purchased a business-owners policy of insurance, number 92-BC-D117-0, from State Farm, which was reissued annually and in effect in December of 2012.  The policy contains several exclusions, including for loss caused by "[s]ettling, cracking, shrinking or expansion" and for loss attributable to faulty "[d]esign, specifications, workmanship, repair, construction, renovation, remodeling, grading, [and] compaction . . . ."  *See* Plf.'s Mot., Ex. A at 7-8.  The Exclusions provision further states in relevant part:

> 2.     We do not insure under any coverage for loss whether consisting of, or directly and immediately caused by, one or more of the following:
>
>                     *                          *                          *
>
> i.     Collapse
>
> Collapse, except as provided under SECTION 1–EXTENSIONS OF COVERAGE. But if collapse results in a Covered Cause of Loss, we will pay for the loss caused by that Covered Cause Of Loss.

*See id.* at 7.   The policy's extension of coverage provision states in relevant part:

> Subject to the terms and conditions applicable to SECTION 1 of this coverage form, the following Extensions of Coverage apply separately to each premises[.]
>
>                     *                          *                          *
>
> 4.     Collapse
>
> a.     With respect to buildings:

---

to that claim.

-2-

(1) Collapse means an abrupt falling down or caving in of a building or any part of a building or part of the building cannot be occupied for its intended purpose;

(2) A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse;

(3) A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building; and

(4) A building that is standing or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

b.      We will pay for accidental direct physical loss to Covered Property, caused by collapse of a building or any part of a building that is insured under this coverage form or that contains Covered Property insured under this coverage form, if the collapse is caused by one or more of the following:

(1) Any of the "specified causes of loss" or by breakage of building glass, all only as insured against in this coverage form;

(2) Decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

(3) Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

(4) Weight of people or personal property;

(5) Weight of rain that collects on a roof; or

(6) Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation. However, if the collapse occurs after construction, remodeling or renovation is complete and is caused in part by a cause of loss listed in Paragraphs (1) through (5), we will pay for the loss even if use of defective material or methods in construction, remodeling or renovation, contributes to the collapse.

*Id.* at 9.

On December 15, 2012, Pastor Robert McCathern contacted State Farm indicating that a 15-foot by 15-foot section of the 30-foot high plaster ceiling inside the church had collapsed and fell down in the church's sanctuary. On December 18, 2012, claims representative Mary Brown inspected the damage with Paster McCathern and Tom Blondin, a contractor referred by the Church's insurance agent. Ms. Brown's log notes indicate that she determined there was coverage under the policy for the damage to the church.

-3-

The next day, the church hired Urban Builders and Developers as its contractor.  Urban Builders retained Lopez Engineering to inspect the integrity of the building and the remaining portions of the ceiling.  In a report dated January 15, 2013, Lopez engineer, Michael C. Wise, opined that:

> The exterior load bearing walls on each side of the church have bowed outward at the top of the walls a very significant amount.  (At least 10") This is a result of horizontal forces being exerted on the walls from the roof framing system and its inability to properly resist these loads.

*See* State Farm's Mot., Ex. A at 1.  Mr. Wise further found that "[t]he original design of the roof structure with the barrel roof has inherent problems that make it difficult to prevent future problems from occurring after repairs have been completed."  *Id.* at 2.

Thereafter, State Farm retained engineer Daniel Miller of William A. Kibbe and Associates/I-ENG-A, to determine the cause of the ceiling collapse.  Mr. Miller's January 28, 2013 report determined that the bottom chords of the roof's truss system had been reinforced, likely within the previous 10-15 years.  *Id*., Ex. B at 2.  Miller further found that many of the truss top chord members were sagging, and that some of their splice connections were kinked.  He observed extensive cracking and splitting of truss top chord members, to the point that they were no longer structurally sound.  *Id*. at 2-3.  He determined that the collapse was attributable to the performance of the roof scissor trusses and that the roof was poorly designed such that it "most likely started to deflect as soon as the structure was built."  *Id*.  He found that the structural distortion due to the movement of the scissor trusses from poor design caused the ceiling to crack, and loosen the metal lath connections of the plaster ceiling to the roof, eventually causing the ceiling to fall.  *Id.*

On the basis of Miller's conclusions, State Farm determined that the cause of the loss was poor design leading to the eventual failure, which is not covered under the subject policy.  On

February 7, 2013, Pastor McCathern wrote a letter to State Farm requesting that it reconsider its position. A letter prepared by Josiah Curry of Urban Builders was included with Paster McCathern's request for reconsideration. Mr. Curry opined that the loss occurred due to cracking and failure of the truss top chord caused by snow and ice damming on the eaves edge. Curry further concluded that the ceiling collapse was not due to poor maintenance or the age of the structure.

On February 12, 2013, Miller prepared a supplemental report in order to address the issues raised by Pastor McCathern and Curry regarding the cause of the ceiling collapse. *See* State Farm's Mot., Ex. G. Miller's supplemental report indicated that he had reviewed weather data and concluded that "there is very low probability that any snow was on the roof when the ceiling fell. *Id.* at 5. Miller found that neither hidden decay, nor insect or vermin damage caused the ceiling to collapse. He further opined that the loss was not caused by the weight of people, personal property or rain. Based on Miller's reports, State Farm issued a February 15, 2013 denial of coverage letter on Plaintiff's claim.

## III.   LAW & ANALYSIS

### A.   Standard of Review

Federal Rule of Civil Procedure 56(a) empowers the court to render summary judgment forthwith "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky*

*Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.,* 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (citing *Anderson*, 477 U.S. at 252).

**B.    State Farm's Motion for Partial Summary Judgment**

This is a diversity action, thus Michigan law applies. *See Erie R.R. v. Tompkins*, 304 U.S.

-6-

64, 78 (1938). "In Michigan, courts construe insurance policies in the same manner as other contracts." *Fed. Ins. Co. v. Hartford Steam Boiler Inspection & Ins. Co.*, 415 F.3d 487, 495 (6th Cir. 2005). The contract must be enforced in accordance with its terms, and a court may not hold an insurer liable for a risk it did not assume. *Citizens Ins. Co. v. Pro-Seal Servicing Group, Inc.*, 477 Mich. 75, 82; 730 N.W.2d 682 (2007). "If the provisions of a policy are clear and unambiguous, the court applies the terms in their plain, ordinary and popular sense." *Fed. Ins. Co.*, 415 F.3d at 495 (internal quotation marks omitted). Whether an ambiguity exists is a question of law for the court to resolve. *Id.*

It is well settled that "[e]xclusionary clauses in insurance policies are strictly construed in favor of the insured." *Auto-Owners Ins. Co. v. Churchman*, 440 Mich. 560, 567; 489 N.W.2d 431 (1992). However, coverage under a policy applies to an insured's particular claims, such that "[c]lear and specific exclusions must be given effect." *Id.*

State Farm maintains that the Plaintiff's claim is barred by the subject policy's exclusion for damage resulting from "[s]ettling, cracking, shrinking, expansion," as well as the policy's exclusion for faulty design. State Farm's expert, Daniel Miller, testified during his deposition that the collapse resulted from the manner in which the church was constructed. Further, Plaintiff's retained engineer, Michael Wise, is also of the opinion that the loss was caused by the bowing of walls and roof trusses. He opined that "the original design of the roof structure . . . has inherent problems." State Farm maintains that there is no evidence in the record contradicting Miller's and Wise's opinions, thus there is no genuine issue for trial that the claimed loss is not covered under the subject policy.

State Farm further argues that the policy's collapse extension coverage does not provide coverage for Plaintiff's claim. The policy's extension of coverage for collapse applies only if one

or more of the specified perils listed in that subsection apply, and there is no evidence that any of the listed perils caused the loss. Miller's supplemental report addressed whether the ceiling damage was caused by any of the listed perils in the policy's extension of coverage provision for collapse and opined that he found no evidence of decay in the trusses, insects or vermin damage, nor evidence that the weight of people, personal property or rain contributed to the claimed loss.

State Farm relies on *Travelers Prop. Cas. of Am. v. Eyde Co.*, No. 5:05-CV-168, 2007 U.S. Dist. LEXIS 1674 (W.D. Mich. Jan. 9, 2007); *Pioneer State Mutual Ins. Co. v. Splan*, No. 220477, 2003 Mich. App. LEXIS 743 (Mich. Ct. App. Mar. 18, 2003); and *Suttmann v. Wolverine Mut. Ins. Co.*, No. 211904, 1999 Mich. App. LEXIS 2240 (Mich. Ct. App. Dec. 21, 1999).

In *Travelers Prop. Cas. of Am.*, the court concluded that the claimed loss was not covered under the policy's collapse provision because "coverage is preconditioned on the collapse being caused by only one or more of the listed perils." 2007 U.S. Dist. LEXIS 1674, at *10. As such, because the evidence of record demonstrated that the collapse was due to a defective design, and not due to one of the listed perils providing for an exception to the collapse exclusion, coverage was not available under the subject policy. *See id.* at *12-25.

Similarly, in *Pioneer State Mut. Ins. Co.*, the policy insured "direct physical loss to covered property involving [the] collapse of a building or any part of building," but excluded coverage for loss caused by "settling, cracking, shrinking, bulging or expansion." 2003 Mich. App. LEXIS 743, at *3-5. After the roof developed a "severe sag," the homeowners submitted a claim asserting that the damage was due to build-up of ice and snow, however the insurance company investigated the damage and concluded that it was caused by structural defects and denied coverage. *See id.* at *2.

The *Pioneer* court affirmed the trial court's decision granting summary judgment in favor of the defendant-insurer, explaining that "while a 'collapse' caused by the weight of ice or snow may

-8-

be a covered loss under the policy, the unambiguous policy exclusion for latent structural defects and faulty design or construction clearly preclude coverage." *See id.* at \*13. The *Pioneer* court rejected the homeowners' argument that the damage was caused by the weight of ice and snow:

> When the trial court granted Pioneer's motion, it had before it the Splans' proof of loss claim which stated that ice and snow build up caused the damage. The Splans made similar, unsupported assertions in their complaint and briefs in response to Pioneer's motion. However, Pioneer submitted a report by professional engineer Roswell Ard, Jr., in which he found that 'there is no evidence that the weight of ice and snow during immediately preceding winters produced the damage that was observed.' . . . The evidence clearly showed that the primary cause, if not the only cause of damage to the Splans' home was the significant structural defects in the home which existed long before the crack developed in December 1993.

*See id.* at \*9-10. State Farm argues that the instant matter is analogous to the facts in *Pioneer* because both Plaintiff's engineer and State Farm's expert opined that the damage was due to faulty design. There is no evidence that the damage to the church was attributable to any of the listed perils set forth in the collapse extension provision of the policy.

In any event, even if one or more of the listed perils contributed in some fashion to the collapse, the subject policy's exclusion for splitting, cracking and faulty design outright bars Plaintiff's claim.

> As is clear from the policy language itself, Pioneer provides coverage for a collapse caused by a specific, listed condition, but unequivocally excludes coverage for collapse caused by any other condition not listed in the collapse provision. Moreover, the policy expressly sets forth an exclusion for which Pioneer will not provide coverage, which specifically includes latent defects and faulty design and construction. An insurance policy must be enforced in accordance with its terms and we will not hold an insurance company liable for a risk it did not assume. The trial court correctly granted summary disposition to Pioneer on this issue because there is no genuine issue of material fact regarding the cause of damages in this case and Pioneer is entitled to judgment as a matter of law.

*Id.* at \*13-14 (internal quotations and citations omitted).

Similarly, in *Suttmann*, the Michigan Court of Appeals affirmed the trial court's decision

granting summary judgment in favor of the insurer. 1999 Mich. App. LEXIS 2240, *3-14.  The trial court determined that the cause of the plaintiffs' damages "was latent deficiencies such as defective design, construction, and workmanship rather than the weight of ice and snow." *See id.* at *5.  The trial court further opined that "a reasonable winter occupancy and heating of the home inevitably led to excessive ice buildup secondary to defective roof construction and collateral consequences throughout a structure incapable of carrying the second-story load as well as normal roof loads." *Id.* at *6.  The Michigan Court of Appeals  rejected the plaintiffs' argument that  the exclusions section did not apply to the additional coverage section, which provided coverage for collapse under specified circumstances.  *Id*. at *5-9.  The *Suttmann* court held in pertinent part:

> As a covered peril, collapse is included within Additional Coverages[;] . . . the policy allows some coverage for collapse under very specific conditions, including collapse caused by those Perils Insured Against listed under Coverage C (which includes the weight of ice or snow).  These specific risks for which the insurer will cover damages caused by collapse, as well as the exclusions for which the insurer will not provide coverage, are not ambiguous and should be enforced.  Moreover, enforcing the policy exclusions does not render the additional coverage for collapse illusory as plaintiffs contend.  The Collapse provision continues to provide specific additional coverage that would not otherwise be covered under the terms of the contract.

*See id.* at *8-9.

Conversely, Plaintiff maintains that the loss is entitled to coverage under the extension of coverage for collapse provision within the subject policy.  Plaintiff argues that the collapse of the ceiling resulted from "decay that was hidden from view and unknown to the congregation and in part by defective methods of construction."  Plf.'s Resp. at 2.  Plaintiff is correct that collapse due to "hidden decay" is one of the listed perils for which State Farm has agreed to insure in the extension of coverage provision set forth in the policy.  However, Plaintiff has failed to come forward with any evidence suggesting that "hidden decay" caused the collapse.  Rather, Plaintiff relies on Miller's testimony that he found a "loss of strength" in the roof trusses.  Plaintiff asserts that this "loss of

strength" is synonymous with "hidden decay."  However, this argument has been rejected by the *Travelers Prop. Cas. of Am.* court, which found that decay "is not a general, gradual  decline in strength, but rather, the organic rot or deterioration from a normal state."  2007 U.S. Dist. LEXIS 1674, at *23; *see also Lakeland Asphalt Corp. v. Westfield Ins. Co.*, No. 1:10-CV-887, 2012 U.S. Dist. LEXIS 12764, *12 (W.D. Mich. Feb. 2, 2012).

Plaintiff further argues  because the word "only" does not appear in the collapse extension provision, the collapse need not be caused by one of the enumerated perils in that provision.  This argument ignores Michigan case law finding that "coverage is preconditioned on the collapse being caused by only one or more of the listed perils . . . if any cause of the loss is due to a peril not enumerated under the policy, the collapse is not" covered.  *Travelers Prop. Cas. of Am.*, 2007 U.S. Dist. LEXIS 1674, at *10; *see also Suttmann*, 1999 Mich. App. LEXIS 2240, *5-9.

 Additionally, Plaintiff's reliance on *Besic v. Citizens Ins. Co.*, 290 Mich. App. 19, 24; 800 N.W. 2d 93 (2012), to support its argument that the collapse extension provision trumps the general exclusions under the policy is without merit.  *Besic* involved a claim for PIP benefits under Michigan's No Fault Act.  Moreover,  *Besic* did not involve a separate collapse extension provision like the subject policy at issue herein.

Lastly, Plaintiff's reliance on *Hani & Ramiz Inc. v. North Pointe Ins. Co.*, No. 316453, 2014 WL 523492 (Mich. Ct. App. Feb. 4, 2014) is misplaced because the facts in that case are unlike the facts present here. In *Hani & Ramiz Inc.*, the evidence demonstrated that flame-retardant chemicals had been used to treat the wood trusses, and the parties agreed that the chemicals "accelerated the lumber's decomposition and . . . the roof of plaintiff' grocery store would not have collapsed but for the chemically-treated lumber . . . ."  *Id.* at *3.  Here, the evidence of record reveals that the damage to the church's ceiling resulted from faulty design and cracks in the roof trusses. The remaining

cases relied on by Plaintiff do not involve application of Michigan contract law, nor are they controlling or persuasive upon this Court.

Based on the foregoing, State Farm is entitled to judgment in its favor on Plaintiff's collapse claim as it is not covered under the subject policy.

### C.      Plaintiff's Motion for Partial Summary Judgment

Because the Court concludes that State Farm is entitled to partial judgment in its favor, Plaintiff's Motion for Partial Summary Judgment as to liability on its collapse claim is due to be denied.  The collapse suffered by Plaintiff is excluded from coverage pursuant to the policy's exclusions for damage resulting from "[s]ettling, cracking, shrinking, expansion," as well as for faulty design.  The evidence provided by the parties' experts demonstrates that the loss resulted from the manner in which the roof trusses were constructed many years ago when the church was built. Additionally, the extension of coverage provision for collapse is unavailable because there is no question of fact that none of the listed perils for which coverage would apply were the cause of the damage.  Plaintiff's Motion for Partial Summary Judgment is therefore denied.

## IV.      CONCLUSION

For the foregoing reasons, State Farm's Motion for Partial Summary Judgment [#23] is GRANTED and Plaintiff's Motion for Partial Summary Judgment [#22] is DENIED.

SO ORDERED.

Dated: July 18, 2014                       /s/Gershwin A Drain_____
                                           GERSHWIN A. DRAIN
                                           UNITED STATES DISTRICT JUDGE